J. S. STAEDTLER, INC. *v.* UNITED STATES (No. 4075)[1]

United States Court of Customs and Patent Appeals, October 25, 1937

*Allan R. Brown* for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.,* special attorney of counsel), for the United States.

[1] T. D. 49255.

[Oral argument October 5, 1937, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The only issue to be determined by this court in the instant case, which is an appeal from a judgment of the United States Customs Court, First Division, is whether the Collector of Customs at the port of New York proceeded legally, under section 522[1] of the Tariff Act of 1930, in converting the value of the German reichsmark into currency of the United States for the purpose of assessing and collecting duties upon an importation of merchandise, consisting, according to the appraiser's "Answer to Protest," of "colored or crayon leads, copy or indelible leads."

A question as to the proper classification of a portion of the merchandise was raised by the protest and determined by the trial court in accordance with the claim of the importer, the Government acquiescing in such determination. No appeal as to this part of the trial court's judgment order was taken.

It will be observed from the text of section 522 of the Tariff Act of 1930, quoted in the footnote, that the authority to estimate the value of foreign coin, "as expressed in the money of account of the United States," is conferred upon the Director of the Mint, and the only duty required of the Secretary of the Treasury is the ministerial one of proclaiming the values so "estimated." The section further provides that wherever it is necessary to convert foreign currency into currency of the United States for the purpose of the assessment and collection of duties upon imported merchandise, such conversion

---

[1] SEC. 522. CONVERSION OF CURRENCY.

(a) VALUE OF FOREIGN COIN PROCLAIMED BY SECRETARY OF TREASURY.—Section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

"SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year."

(b) PROCLAIMED VALUE BASIS OF CONVERSION.—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

(c) MARKET RATE WHEN NO PROCLAMATION.—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

shall be at the value "proclaimed" by the Secretary of the Treasury as having been estimated by the Director of the Mint for the quarter in which the merchandise was exported, with two exceptions. The first exception is when "no such value has been proclaimed"; the second is when a value has been proclaimed but the same "varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation," as determined by the Federal Reserve Bank of New York.

T. D. 46968 (65 Treas. Dec. 541), the legality of which, as later will appear, is here questioned, was issued by the Secretary of the Treasury under date of April 1, 1934. It stated, or "proclaimed," the value of the German reichsmark, estimated by the Director of the Mint, for the quarter beginning April 1, 1934, to be $0.4033. The merchandise here involved was exported from Germany on May 24, 1934. It appears from T. D. 47070 (65 Treas. Dec. 858) that on the latter date the value of the reichsmark, certified by the Federal Reserve Bank of New York to the Secretary of the Treasury, was $0.393785.

It is thus to be seen that the variation between the value stated by the Secretary of the Treasury in T. D. 46968 as having been estimated by the Director of the Mint, which was used by the collector in making the conversion, and the market, or buying, rate certified by the Federal Reserve Bank of New York did not amount to 5 per centum. So, there is no claim on the part of appellant under the second exception above stated.

Its claim is that T. D. 46968 was illegal and, therefore, was not a proclamation. In other words, it is claimed that, because of its alleged illegality, T. D. 46968 was not a proclamation, and, hence, that the situation provided in the first exception above stated existed. Wherefore, it is insisted that the collector should have converted the mark at the "Federal Reserve rate for May 24, 1934."

So much of T. D. 46968 as is here pertinent reads:

[Circular No. 1. Director of the Mint]

TREASURY DEPARTMENT, *April 1, 1934*

Pursuant to section 522, title IV, of the Tariff Act of 1930, reenacting section 25 of the act of August 27, 1894, as amended, the following estimates by the Director of the Mint of the values of foreign monetary units are hereby proclaimed to be the values of such units in terms of the money of account of the United States that are to be followed in estimating the value of all foreign merchandise exported to the United States during the quarter beginning April 1, 1934, expressed in any such foreign monetary units: *Provided, however,* That if no such value has been proclaimed, or if the value so proclaimed varies by 5 percent or more from a value measured by the buying rate on the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate, as determined and certified by the Federal Reserve Bank of New York and published by the Secretary of the Treasury pursuant to the provisions of section 522, title IV, of the Tariff Act of 1930.

H. MORGENTHAU, JR.,
*Secretary of the Treasury.*

*Values of foreign monetary units*

[At par as regards gold units; nongold units have no fixed par with gold]

| Country | Legal standard | Monetary unit | Value in terms of U. S. money | Remarks |
|---|---|---|---|---|
| * * * <br> * * * <br> Germany_____ <br> * * * | * * * <br> Gold_____ <br> ____do_____ <br> * * * | * * * <br> * * * <br> Reichsmark_____ <br> * * * | * * * <br> * * * <br> .4033 <br> * * * | * * * <br> * * * <br> * * * <br> * * * |

T. D. 47070 need not be quoted. It recited value on May 24, 1934, in the amount already stated, *supra*.

In the brief before us appellant bases its claim as to the illegality of T. D. 46968 upon two grounds, but in the oral argument counsel pressed only one of these.

The first ground (which counsel stated orally in the argument before us would not be pressed) related to the form of T. D. 46968. It was pointed out in the brief that section 522 (a) of the Tariff Act of 1930 is headed, "Value of foreign coin proclaimed by the Secretary of the Treasury," and that section 25 of the act of August 27, 1894 (re-enacted "without change" in said section 522), provides that the value of the standard *coins* of the various nations shall be estimated and proclaimed. It is then further pointed out that in T. D. 46968 the Secretary proclaimed the "values of 'foreign monetary units' " and, it is claimed in the brief, that he "does not pretend to proclaim the value of foreign coins." Counsel conceded, however, that a metallic reichsmark, or metallic coin of that denomination, was in circulation in Germany at the time of the exportation of the merchandise, and that the values declared, respectively, in T. D. 46968 and T. D. 47070 were coin values. Hence, the contention based upon the use of the phrase "foreign monetary units" was withdrawn so far as the instant case is concerned. We need not, therefore, consider it, but its recital is deemed proper in view of the general aspect of the case.

The second ground, the one upon which reliance is placed, is that the proclaimed value is not, in fact, the value of foreign coin expressed in *money of account* of the United States, but the value of the foreign monetary unit expressed in gold, and the insistence is that gold is not the money of account of the United States.

The brief says:

In the second place the proclaimed value as contemplated by the statute is the value of foreign coin as expressed in the *money of account* of the United States. The proclaimed value in this case is not the value of the foreign monetary unit expressed in the money of account of the United States, but it is the value of the foreign monetary unit expressed in gold. Gold is forbidden to be used as the money of account of the United States.

It will be noted in T. D. 46805, January 1, 1934, the value of the German mark was .2382. This is the standard gold relation which had been used for many

years. On January 30, 1934, the Gold Reserve Act was passed (U. S. Code, page 1387), and in accordance with that statute there appeared on January 31, 1934, the proclamation of the President decreasing the amount of gold in the United States dollar. By virtue of Section 1 of the law of March 14, 1900 (31 Stat. at L., 45), the weight of gold in the dollar was fixed at 25.8 grains of gold nine-tenths fine. This was reduced by the proclamation to 15$\frac{5}{21}$ grains of gold nine-tenths fine. This change in the gold weight was the cause of the change in the proclaimed value of the German mark. A simple mathematical calculation shows that the increase from .2382 to .4033 exactly equivalates for the reduction of the weight of gold in the dollar as above set forth.

A series of calculations in which various Treasury decisions are cited follows and the brief continues:

The point is, however, that Section 522 does not provide for the proclamation of the value of the foreign coin as expressed in gold, but in "the money of account of the United States." By the law of June 5, 1933, gold was forbidden to be used as the money of account of the United States (U. S. Code, page 1389). That law not only forbade to the obligee on past contracts the right to require payment in gold, but it also provided that no future contract should be made on the gold basis.

"* * * and no such provision shall be contained in or made with respect to any obligation hereafter incurred."

It is obvious, therefore, that gold can not be said to be the money of account of the United States, and a proclamation of the value of the German mark in gold is not in conformity with the law. * * *

At another point in the brief it is said:

It must be emphasized that in the case at bar there is no question as to the *correctness* of a secretarial proclamation of currency value. It is claimed that there was no proclamation as contemplated by law. [Italics ours.]

A statement to the same purport seems to have been made before the trial court.

That court (Brown, J., dissenting), largely upon the authority of *Amalgamated Textiles, Ltd.* v. *United States*, 24 C. C. P. A. (Customs) 74, T. D. 48378, wherein we affirmed that court's decision in T. D. 47931 (we relying upon the decisions in *Cramer* v. *Arthur*, 102 U. S. 612, and *Hadden* v. *Merritt*, 115 U. S. 25), held:

* * * we are precluded from inquiring into the correctness of the findings set forth in the proclamation by the Secretary, as controlling here, and the currency value claim in the protest is therefore overruled.

It here may be remarked that the issue in the *Amalgamated Textiles, Ltd.* case, *supra*, did not involve the same question as that here presented. It was there claimed that gold coins were not, at the time of the exportation of the merchandise there involved, standard coins in circulation in Great Britain and that such fact was recognized in the proclamation. Here it is conceded that a German coin, the equivalent of gold, was in circulation in Germany, but the claim is, as has been stated, that gold is not the "money of account" of the United States, this contention being based, as we understand it, upon deductions drawn from the act of June 5, 1933, 31 U. S. C. A. §463.

We are of the opinion that to place upon the phrase "money of account," as used in the different statutes pertinent here, the interpretation sought on behalf of appellant would be erroneous. R. S. 3563, 31 U. S. C. A. §371, was derived from the act of April 2, 1792, c. 16, §20, 1 Stat. 250, establishing the decimal system as to monies of the United States. It reads:

> * * * The money of account of the United States shall be expressed in dollars or units, dimes or tenths, cents or hundredths, and mills or thousandths, a dime being the tenth part of a dollar, a cent the hundredth part of a dollar, a mill the thousandth part of a dollar; and all accounts in the public offices and all proceedings in the courts shall be kept and had in conformity to this regulation.

In the decision of the trial court are quoted certain dictionary definitions of the term "money of account." Thus, Funk & Wagnalls' New Standard Dictionary defines it as:

> A monetary denomination used in keeping accounts, but not represented by a coin, as the mill of the United States.

The definition given in Webster's New International Dictionary is:

> A denominator of value, or basis of exchange, used in keeping accounts, for which there may, or may not, be an equivalent coin; e. g., the mill is a *money of account* in the United States, but not a coin.

Section 25 of the act of August 27, 1894, reenacted in section 522 of the Tariff Act of 1930, quoted *supra*, defines what the value of foreign coins shall be as expressed in the money of account of the United States and makes it the duty of the Director of the Mint to estimate the values (which thereafter are proclaimed by the Secretary of the Treasury) upon that basis, and we are unable to see wherein this provision has been in anywise affected by the legislation respecting monetary gold cited by appellant's counsel.

Certainly, T. D. 46968 (omitting any question with respect to the phrase "foreign monetary units" instead of the statutory phrase "foreign coins," admitted to be of no consequence here) is not questioned as to its form. Its correctness as a secretarial proclamation of currency value is conceded. Its legality is not brought in issue by reason of anything appearing on its face. Only deductions drawn from calculations respecting gold values, in view of the reduction in the weight of the gold dollar, are relied upon to establish illegality. The matters relied upon are extraneous to the T. D. itself, and extraneous to section 522 of the Tariff Act of 1930, *supra*, the provisions of which have not been affected in any way by any of the legislation cited by appellant, or otherwise brought to our attention.

In the brief on behalf of appellant it is said:

> The mere fact that the Secretary of the Treasury in his proclamation has stated that the values are expressed in terms of the money of account of the United States is not determinative.

So far as any judicial review is concerned, this contention, we think, contravenes the decision of the Supreme Court of the United States in the case of *Hadden* v. *Merritt, supra,* wherein, *inter alia,* it was declared:

The value of foreign coins, as ascertained by the estimate of the director of the mint and proclaimed by the Secretary of the Treasury, is conclusive upon custom-house officers and importers. *No errors alleged to exist in the estimate, resulting from any cause, can be shown in a judicial proceeding,* to affect the rights of the government or individuals. *There is no value, and can be none, in such coins, except as thus ascertained;* and the duty of ascertaining and declaring their value, cast upon the Treasury Department, is the performance of an executive function, requiring skill and the exercise of judgment and discretion, which precludes judicial inquiry into the correctness of the decision. If any error, in adopting a wrong standard, rule, or mode of computation, or in any other way, is alleged to have been committed, there is but one method of correction. That is to appeal to the department itself. To permit judicial inquiry in any case is to open a matter for repeated decision, which the statute evidently intended should be annually settled by public authority; and there is not, as is assumed in the argument of the plaintiff in error, any such positive and peremptory rule of valuation prescribed in the statute, as serves to limit the discretion of the Treasury Department in making its published estimate, or would enable a court to correct an alleged mistake or miscalculation. The whole subject is confided by the law exclusively to the jurisdiction of the executive officers charged with the duty; and their action cannot be otherwise questioned. [Italics new here.]

The several decided cases cited in support of appellant's contention that the issue presented is justiciable have been examined quite carefully, but no one of them, in our opinion, is here apropos.

We concur in the conclusion reached by the majority of the First Division of the United States Customs Court and its judgment is *affirmed.*